UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:18-cr-00104-KJM |
| Plaintiff, | |
| v. | ORDER |
| CHRISTIAN OROZCO, et al., | |
| Defendants. | |

Defendant Christian Carlos Orozco has filed a renewed motion for bail review. Mot. for Bail Review ("Third Mot.[1]"), ECF No. 179. The government opposes, Opp'n, ECF No. 185, and defendant has filed a reply, Reply, ECF No. 186. Having carefully considered the briefing and the parties' arguments at a videoconference hearing on May 26, 2020, the court DENIES defendant's motion.

I.   BACKGROUND

Defendant is charged in an indictment with several firearms offenses arising from the alleged sale of 33 firearms to an undercover agent with the Bureau of Alcohol, Tobacco, and Firearms. *See generally* Indictment, ECF No. 32. Defendant previously suffered a state conviction for a firearms-related felony in 2016; the indictment here charges him with felon in

---

[1] The court identifies this motion as the third such motion in light of defendant's prior motion for bail review followed by a motion for revocation of detention, as reviewed below.

1

possession of a firearm as well. *See id.* at 3–4. Defendant was on probation following service of a prison sentence for his state firearms felony when he allegedly committed the acts charged in the indictment. *Id.*

On April 6, 2020, defendant moved for bail review, in part based on circumstances created by the coronavirus (COVID-19) pandemic, and also sought an order for a competency evaluation. Mot. For Hearing on Competency; Mot. For Release From Custody, ECF No. 151. The undersigned referred the motion to the duty Magistrate Judge, who denied the motion on the basis that no conditions of pretrial release could overcome defendant's danger to the community. ECF No. 162; *see also* H'rg Tr., ECF No. 165. Defendant moved for a review of the Magistrate Judge's order of detention before this court, in a motion styled as a motion to revoke. Mot. to Revoke Order of Detention, ECF No. 167.

At hearing before this court on the motion to revoke and for a competency evaluation, defendant withdrew his request for a competency evaluation. Proceeding on the revocation motion, defendant proposed to be released to his mother's home, where he would live with her, his stepfather, his brother, his brother's wife and their children, offering a third party custodianship and unsecured bonds signed by his mother and brother. The court denied defendant's motion to revoke the detention order from the bench, without prejudice. Hr'g Tr. at 18:4, ECF No. 177. The court explained, "Ultimately, the issue that remains unresolved in the Court's mind is the question of danger, and I do believe the failure to comply with the state conditions previously and the fact of Mr. Orozco's being on state supervision at the time of his arrest here do support a finding that he is a danger [.]" *Id* at 17:22–18:1. The court advised any renewed motion regarding detention could be brought in this court in the first instance. *See* Minutes, ECF No. 172.

Defendant filed the instant motion to revoke on May 13, 2020, relying on 18 U.S.C. § 3142(f). He asserts there are three pieces of new information material to the question of whether there are conditions of release that will reasonably assure his appearance as required and the safety of any other person or the community. Third Mot. at 1. The new information consists of the following: (1) he has secured full-time employment at a tree-trimming service; (2) his

brother's wife will serve as a second third party custodian in addition to his brother; and (3) his 2016 term of state probation was reduced from formal to informal by motion of his probation officer, resulting in a lack of close supervision at the time he is alleged to have committed the charged offense, suggesting that the closer supervision available now in this case can overcome concerns regarding dangerousness. *Id.*

The parties agree the focus of the motion is whether danger to the community can be addressed through conditions of pretrial release, and so the court analyzes that prong alone without reaching the question of flight risk.

II.     LEGAL STANDARD

A person "ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court . . . may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." 18 U.S.C. § 3145(b). Under this provision, the district court conducts its own de novo review of the magistrate judge's detention order. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). The district court "should review the evidence before the magistrate [judge] and make its own independent determination whether the magistrate[ judge]'s findings are correct, with no deference." *Id*. at 1193. "[T]he district court, while empowered to do so, is not required to hold an evidentiary hearing when no evidence is offered that was not before the magistrate [judge]." *Id.*

If the court "finds that no condition or combination of conditions will reasonably assure [] the safety of any other person and the community" it must order the defendant detained before trial. 18 U.S.C. § 3142(e)(1). There is a rebuttable presumption against release if the court finds the defendant was convicted of a state offense involving possession or use of a firearm that would have qualified as a federal crime had jurisdiction existed. 18 U.S.C. § 3142(e)(2)(A) & § 3142(f)(1)(E). However, "the government may not rest solely on the rebuttable presumption to support its motion to detain a defendant pending trial." *United States v. Moore*, 607 F. Supp. 489, 498 (N.D. Cal. 1985). While the defendant has the burden of production of information

tending to show he will not pose a danger to the community, the government "retains the burden throughout the proceeding to show by clear and convincing evidence that no condition or combination of conditions would reasonably assure [] the safety of the community." *Id.* at 497–98. (citing 18 U.S.C. § 3142(f)).

Title 18 U.S.C. § 3142(g) identifies the various factors a court considers in determining whether conditions of release can be fashioned to reasonably assure the safety of any other person and the community.  Specifically, the court must account for available information concerning the nature and circumstances of the offense charged, the weight of the evidence against the person and the history and characteristics of the person. 18 U.S.C. § 3142(g).  The history and characteristics of the person comprise the following attributes: character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, record concerning appearance at court proceedings, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *Id.*

III.   DISCUSSION

A bail review hearing "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing" and the information has a material bearing on the issue of danger to the community.  18 U.S.C. § 3142(f).  Defendant argues his plan for family support, recent offer of employment, and the clarification of the date on which his prior state probation converted to informal supervision all constitute new information warranting reopening the hearing.  Mot. at 1; Reply at 1–3.  The government argues none of this is new information, and the court should not reopen the hearing.  Opp'n at 1–2. The court finds, at minimum, defendant's offer of employment with a tree trimming service, discussed below, is new information that could materially alter the analysis.  Thus, the court reopens the hearing and turns to the merits of the motion.

To rebut the presumption against release created by his prior state firearms conviction, defendant must come forward in meeting his burden of production with "some

credible evidence forming a basis for his contention that he will appear and not pose a threat to the community." *United States v. Thomas*, 667 F. Supp. 727, 728 (D. Ore. 1987). Once the defendant meets the burden of production, then the government has the burden of demonstrating by clear and convincing evidence no condition or conditions could mitigate the danger the defendant would pose to the community. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). If the court finds that danger to the community cannot be mitigated by conditions of release, it may order that the defendant remain in custody. 18 U.S.C. § 3142(e)(1).

### A.  Defendant's Proposed Plan of Release

Defendant's release plan centers around his proposed residence at a family home with two family members serving as third party custodians, the signing of unsecured bonds by two family members, and employment with a tree maintenance service.

His proposed residential plan contemplates living at his mother's home in Lodi, along with his stepfather, older brother and his wife, and their three school-age children. His prior conviction for state felony firearm possession arose from his arrest at the same house in 2016, although the individuals residing at the household were different at that time. The record shows that defendant and his mother resided at the house at the time of his 2016 arrest.

In his second motion, defendant proposed his brother, Eli Napoles, as a third-party custodian. He now proposes to add his sister-in-law, Pauline Mosquea, as a second third-party custodian. Defendant argues the increased family support in the household will keep him from breaking any conditions of his release. Mot. at 6–7. He represents Mr. Napoles and Ms. Mosquea are law-abiding citizens who work staggered shifts. *Id.* As of the filing of defendant's current motion, one of the two was always at the home, while also responsible for supervising three minor children. *Id.*, *see also* Mot. Ex. C, ECF No. 179-3 (email from Eli Napoles explaining composition of his household and work schedules). As of the hearing date, Ms. Mosquea anticipates returning to work full-time June 1. Defendant's counsel argues that notwithstanding the brother and sister-in-law's full-time work, they will be present at the house in the mornings and evenings and able to check on defendant at those times in fulfilling any custodianship responsibilities. Reply at 2–3.

5

Defendant represents his mother, now remarried, and brother, Eli Napoles, are willing to sign unsecured bonds, in an amount to be set by the court. Mot. at 2.

For employment, as clarified at hearing, defendant proposes to work full-time, 45 hours per week for a friend's tree trimming service. The defense provides an email authored by the prospective employer, Salvador Ceja, who states he previously referred defendant to work for Bud's Tri County Tree Service in 2017. Mot. Ex. B., ECF No. 179-2. Mr. Ceja describes defendant as "a very hard, dedicated worker who was very responsible." *Id*. at 2.

In sum, defendant argues his plan of release includes substantially more family support and supervision than he had at the time of his arrest on the current charges. His proposed employment would bring him into daily contact with law-abiding co-workers and occupy his time, reducing the likelihood of his engaging in acts that endanger the community if released. Defendant's counsel argued at hearing that with the addition of location monitoring, his movements would be subject to such close scrutiny that he would have little or no margin for error.

The government emphasizes that defendant would live at the same house from which he engaged in criminal activity before. It notes the job defendant proposes to work is substantially the same tree-trimming he performed in 2017, which did not stop him from engaging in criminal conduct at that time. In short, the government argues defendant proposes to effectively resume the lifestyle he had in 2017, when he allegedly engaged in both the charged and relevant uncharged conduct.

The court finds that defendant's proposed third party custodian arrangements, the offering of unsecured bonds and his proposed employment plan are relevant to a fair consideration under the statute of defendant's family ties, financial condition, and ties to the community, and generally weigh in his favor, while giving some weight to the government's observation that he proposes to return to circumstances similar to those he found himself in at the time of the alleged actions underlying the charges in the indictment.

/////

/////

B. <u>Weight of the Evidence</u>

The Bail Reform Act also requires the court to consider, among other factors, the weight of the evidence against the defendant. 18 U.S.C. § 3142(g)(2). The weight of the evidence is the least important of the factors, *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985); *United States v. Honeyman*, 470 F.2d 473, 474 (9th Cir. 1972), and typically bears more on risk of flight than on danger to the community. *See, e.g., United States v. Chen*, 820 F. Supp. 1205, 1211 (N.D. Cal. 1992) (analyzing weight of evidence in terms of incentive to flee). However, the weight of the evidence is relevant here given the nature of the information supporting the charges, insofar as it could show the present likelihood of defendant's posing a danger to the community if released. *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986). In considering the weight of the evidence here, the court is mindful that it is not making a pretrial determination with respect to guilt. *United States v. Gebro*, 948 F.2d 1118, 1121–22 (9th Cir. 1991); *see also* 18 U.S.C. § 3142(j) (preserving presumption of innocence).

Here, the weight of the evidence is strongly against release. The government has provided an ATF Report of Investigation detailing several of defendant's alleged gun sales to undercover officers between 2016 and 2018. Gov. Ex. 1, ECF No. 185-1. This report encompasses both charged and uncharged conduct and documents a series of illicit firearm sales stretching over a year. As the government argues, these alleged sales appear to have continued through a period of defendant's prior employment with a tree maintenance service during 2017, as well as during the period of time that he obtained a reduction of his state probation from formal to informal supervision. Opp'n at 6–7; Mot. Ex. B, Job Ltr., ECF No. 179-2 (prospective employer's letter referencing past employment with tree service in 2017); Mot. Ex. D, Prob. Ofc. Supp. Report, ECF No. 179-4 (state probation officer's report recommending reduction to informal probation filed on December 19, 2017).

Without conceding that the untested investigative report's contents are true, defendant argues even if the report is given weight it shows only past danger to the community, during the time of the 2016–2018 investigation, and not a current danger. At hearing, the parties agreed the charged conduct comprises exclusively sales of firearms to undercover agents and so

any such weapons were removed from the market. The government argued its investigation shows defendant had also engaged in uncharged sales of firearms to third parties and that those firearms remain unaccounted for. The government's investigative report alone does not support this assertion. Defendant points to another district decision, *United States v. Marquez*, No. 18-cr-00197-CRB-1, 2018 WL 4773152 (N.D. Cal. 2018), as directly analogous. In *Marquez*, the defendant stole fifty-five firearms from a sporting goods store and subsequently trafficked some of them. *Id.* at *1. Forty of the firearms remained unaccounted for, however. *Id.* It appears the defendant lacked a criminal history. *Id.* (defendant "argued that his lack of criminal history supported his request"). The district court, upon reviewing the magistrate judge's detention order, concluded the defendant "no longer ha[d] control of or access to the forty missing firearms" by the time of his motion for release and therefore no longer posed a risk of disseminating firearms into the community. *Id.* at *3. The court's decision was informed by the plan to place defendant in a tightly supervised residential treatment program, with location monitoring. *Id.*

Here, defendant has a criminal history, with a prior felony firearms conviction incurred less than two years prior to his arrest related to the current charges. He is charged with an offense that was allegedly part of a larger chain of distribution, based on actions he reportedly took while first on formal state supervision; his conversion to informal supervision assumed he had fully complied with the conditions previously in effect. While not dispositive of defendant's current inclination toward criminal behavior, the court may consider past criminality in similar circumstances as relevant to the determination of danger to the community. *See, e.g. United States v. Gray*, 529 F.Supp.2d 177, 182 (D. Mass. 2007) (finding relevant defendant's past violations of probation while he lived with his mother, where he proposed to return on his release). This factor weighs strongly against defendant.

Furthermore, defendant's mental state may make him willing to engage in such behavior while on probation and while working in legitimate employment, as discussed below.

C. <u>Defendant's Mental Condition</u>

Defendant's own expert, who conducted an evaluation of defendant in June 2019, opines in her psychological evaluation that defendant has "poor judgment" in certain important

8

1  respects and is "at increased risk for engaging in criminal activity." *See* Def.'s Expert Report at
2  39, 49, ECF No. 174-1 (under seal).[2]  She noted in particular defendant's strong need for social
3  acceptance, making him vulnerable to seeking advice from those who might lead him astray. *Id.*
4  at 39.  And she qualified his risk for criminal conduct by noting that it could be offset by
5  "appropriate educational support" to learn "practical life skills." *Id.* at 49.  In light of this
6  information and the lengthy behavioral history reviewed by the defense expert in her report,
7  defendant's conduct between 2016 and 2018 as relevant hear is consistent with long-standing
8  patterns manifesting in defendant's behavior of poor impulse control, inadequate consideration of
9  consequences and susceptibility to manipulation.  The report supports the conclusion that these
10 characteristics persisted through mid-2019, with no indication of any material change since that
11 time.  Nothing in defendant's proposed release plan addresses his need for "appropriate
12 educational support" as a threshold matter.
13       On balance, the court finds by clear and convincing evidence that no condition or
14 combination of conditions could assure the safety of any other person or the community.
15 IV.  <u>CONCLUSION</u>
16       For the foregoing reasons, the court DENIES defendant's motion to revoke the
17 detention order.
18       IT IS SO ORDERED
19 DATED:  May 27, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] The court cites only concluding statements from the sealed expert's report as consistent with the information discussed with the parties on the record at hearing, without objection from defense counsel.

9